25CA0120 Peo in Interest of AQ 07-10-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0120
Arapahoe County District Court No. 23JV30210
Honorable Shay K. Whitaker, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.Q., a Child,

and Concerning K.R.Q.,

Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE GOMEZ
Freyre and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 10, 2025

---

Ron Carl, County Attorney, Sarah Simchowitz, Assistant County Attorney, Aurora, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    K.R.Q. (mother) appeals the juvenile court's judgment terminating her parent-child legal relationship with A.Q. (the child). We affirm.

## I.    Background

¶ 2    The Arapahoe County Department of Human Services filed a petition in dependency or neglect based on concerns about mother's mental health.

¶ 3    The juvenile court adjudicated the child dependent or neglected and adopted a treatment plan for mother. The treatment plan required mother, among other things, to (1) complete a mental health evaluation and follow any treatment recommendations; (2) attend therapy; (3) take medications as prescribed; and (4) sign releases of information.

¶ 4    About a year after the case commenced and seven months after the treatment plan was adopted, the Department moved to terminate mother's parental rights. Two months later, mother filed a Notice of Application of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213. Following a hearing on mother's ADA notice, the juvenile court declined to make a finding

1

as to whether the ADA applied. However, the court directed both parties to look further into a possible neuropsychology evaluation:

> I want the Department to look into whether or not we can do a neuropsych evaluation, what the timeline is for that, whether or not it's going to get to the heart of the matter in terms of what we're actually looking at, and if we can get one of those in place.
>
> I'm also going to have [mother's counsel] see if she can have some conversations with her client about what piece is missing. Is there lack of understanding? Is it a memory issue? . . . I'm throwing out stuff because I have no idea what piece we feel like is even missing for us to try to put in place for her. And to see if we can get that information.
>
> It may turn out that the pieces that are missing don't necessarily require the neuropsych if she can communicate with you where the gap is in terms of where we're going, we may be able to put some orders in place that will kind of fill that.

¶ 5    It doesn't appear that either party raised any issues regarding the potential neuropsychological evaluation again before the termination hearing two months later. After a contested hearing, the juvenile court granted the termination motion.

## II.    Reasonable Efforts

¶ 6    Mother asserts that the juvenile court erred in finding that the Department made reasonable efforts because the Department knew

2

of mother's mental health diagnosis and failed to conduct a neuropsychological evaluation to determine what accommodations she needed. We disagree.

### A. Applicable Law and Standard of Review

¶ 7 A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan hasn't been successful; (3) the parent is unfit; and (4) the conduct or condition of the parent is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 8 Before a juvenile court may find a parent unfit under section 19-3-604(1)(c), the department must make reasonable efforts to rehabilitate the parent and reunify the family. §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024.

¶ 9 The services provided under section 19-3-208 must comply with the ADA. *See People in Interest of S.K.*, 2019 COA 36, ¶¶ 25, 34; *see also* § 19-3-208(2)(g). When a parent is found to be a qualified individual with a disability under the ADA, an assessment of whether the department made reasonable efforts includes

3

consideration of whether it made reasonable accommodations for the parent's disability. *S.K.*, ¶ 34.

¶ 10    Whether a department satisfied its obligation to make reasonable efforts presents a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error, but we review de novo the court's legal determination based on those findings. *Id.* It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence and to assess the credibility of the witnesses. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

## B.    Analysis

¶ 11    Mother argues that she had a qualifying disability under the ADA (schizophrenia) and that the Department did not make reasonable efforts because it failed to obtain a neuropsychological evaluation to identify appropriate accommodations. The juvenile court expressed doubt as to whether the ADA applied, noting that a mental health diagnosis, without more, "does not necessarily indicate a disability." Ultimately, the court concluded that, even if the ADA applied, the Department engaged in reasonable efforts to

4

accommodate any disability mother might have, but mother didn't cooperate with the Department to share information and engage in efforts to determine what accommodations she may have needed. The record supports the court's conclusions.

¶ 12    Mother's ADA notice did not identify a specific disability, other than making a general reference to "a mental health disorder." Nor did the notice request any particular accommodations. The caseworker testified that mother otherwise made no requests for accommodations and never asked to amend the treatment plan. We also note that mother filed her ADA notice late in the case — nearly fifteen months after the case opened and two months after the Department moved to terminate parental rights. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 16 (a parent should raise an ADA issue "in a timely manner," preferably before a dispositional hearing so the department can provide accommodations in the treatment plan).

¶ 13    At the ADA hearing, mother didn't testify or present any other evidence. Nonetheless, her counsel asked that "the Department implement accommodations," arguing that "they can decide how they want to figure that out." *But see S.K.*, ¶ 21 (a parent should

identify any modifications they believe are necessary to accommodate their disability). After the court questioned mother's attorney about what accommodations she was seeking, the attorney eventually asked for either "a psychological evaluation or a neuropsych."

¶ 14    At the conclusion of the hearing, the court asked the Department to "look into" whether a neuropsychological evaluation could be completed and whether such an evaluation would "get to the heart of the matter." The court also asked mother's attorney to have a conversation with mother about "what piece is missing" and whether a neuropsychological evaluation was needed.

¶ 15    At the time of the hearing, mother was in jail, and it was unclear whether any providers could conduct a neuropsychological evaluation at the jail. The Department later indicated that it had looked into the issue but had not had any success in identifying a provider who could conduct an in-custody evaluation. Moreover, when the caseworker had tried to contact mother at the jail to explore the possibility of such an evaluation, mother had refused to meet with her.

¶ 16    For her part, mother didn't raise the issue of a neuropsychological evaluation at the pretrial readiness conferences, via a separate motion, in the Joint Trial Management Certificate, or in any other way prior to the termination hearing. And the record doesn't contain any reference to mother's attorney having had a conversation with mother about "what piece is missing" and whether a neuropsychological evaluation was needed, as the court requested.

¶ 17    To be sure, mother's mental health, including her schizophrenia diagnosis, was the primary focus of this case. The juvenile court found that, from the beginning of the case, the Department tried to get mother evaluated to determine what treatment was appropriate and whether additional evaluations were necessary. But the court found that mother's lack of engagement prevented the Department from obtaining this information. *See id.* (the parent is responsible for disclosing to the department and the juvenile court information about the alleged disability).

¶ 18    The caseworker testified that early in the case, she made a referral for a psychological evaluation through a provider that works with parents with schizophrenia. This evaluation, the caseworker

7

opined, would have given the Department "what [it] needed to know about [mother] in order to work with her on her treatment plan." Thus, the caseworker didn't "see a need for a neuropsychological evaluation." Despite their attempts to contact mother, the provider was unable to complete the evaluation. The caseworker testified that mother didn't want to work with the provider and instead sought services elsewhere, including with the Colorado Coalition for the Homeless (the Coalition). Mother reported completing a psychological evaluation with the Coalition, but the caseworker couldn't get a copy of the evaluation because mother didn't provide an appropriate release of information. And mother never presented a copy of any evaluation to the Department or the juvenile court.

¶ 19 Accordingly, because the record supports the juvenile court's findings, we discern no error in its conclusion that the Department made reasonable efforts. *See A.S.L.*, ¶ 8.

### III. Disposition

¶ 20 The judgment is affirmed.

JUDGE FREYRE and JUDGE MEIRINK concur.